**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION**

| | |
|---|---|
| S.C. by and through his Next Friend MELISSA C., et al., | ) ) ) |
| Plaintiffs, | ) ) ) Case No. 2:18-cv-04162-NKL |
| v. | ) ) |
| RIVERVIEW GARDENS SCHOOL DISTRICT, et al., | ) ) ) |
| Defendants. | ) |

**ORDER**

Pending before the Court are defendants Missouri Department of Elementary and Secondary Education ("DESE"), Donna Cash, Gavin Allan, Roger Dorson, Missouri State Board of Education, O. Victor Lenz Jr., Michael W. Jones, Peter F. Herschend, Carol Hallquist, and Charles W. Shields' (collectively the "State Defendants") motion to dismiss, Doc. 52, and defendants Riverview Gardens School District, Special Administrative Board ("SAB"), Lynn Beckwith Jr., Veronica Morrow-Reel, Mark Tranel, Scott Spurgeon, Chaketa Riddle, and Andrea Woods' (collectively the "District Defendants") motion to dismiss, Doc. 63. For the following reasons, both motions are granted in part and denied in part.

**I.     Background**

On August 13, 2018, Plaintiffs filed a Complaint against the Riverview Gardens School District (the "District"), the District's SAB, individual members of the District's SAB in their official capacities (Lynn Beckwith Jr., Veronica Morrow-Reel, and Mark Tranel), individual District administrators in their official capacities (Scott Spurgeon, Chaketa Riddle, and Andrea Woods), Missouri DESE, and the Missouri State Board of Education and its members in their official capacities (O. Victor Lenz Jr., Michael W. Jones, Peter F. Herschend, Carol Hallquist, and

Charles W. Shields). Plaintiffs—Melissa C. on her own behalf and as Next Friend to Scott C., Rio M., on her own behalf and as Next Friend to Miles M., Metropolitan Congregations United ("MCU"), and Empower Missouri—allege that Defendants have erected barriers to homeless students' enrollment, transportation, and participation in school and failed to provide those students a trauma-sensitive learning environment in violation of the McKinney-Vento Act, Title II of the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act, and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

Both the State and District Defendants filed motions to dismiss. Thereafter, the State Defendants sought to join the District Defendants' motion, and the Court granted the motion. Doc. 76. The District Defendants did not move to join the State Defendants' motion but have included much of the same arguments in their own motion.

## II. Discussion

Defendants argue that dismissal of Plaintiffs' Complaint is appropriate because: (a) organizational plaintiffs, MCU and Empower Missouri, lack standing, (b) Plaintiffs have failed to exhaust administrative remedies available under the IDEA as to each claim, (c) Plaintiffs have failed to state a claim, and (d) Plaintiffs' Complaint is not a short and plain statement.

### A. Standing

Defendants argue that the claims of MCU and Empower Missouri, two non-profit organizations, should be dismissed for lack of standing. Article III standing requires a showing that the plaintiff has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). An injury in fact is an invasion of a legally protected interest that is "concrete and particularized" and "actual or imminent, not conjectural or

hypothetical." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000).

An organization may establish associational standing "when there is a concrete and demonstrable injury to [the] organization's activities which drains its resources and is more than simply a setback to its abstract social interests." *Nat'l Fed'n of Blind of Missouri v. Cross*, 184 F.3d 973, 979–80 (8th Cir. 1999) (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982)). However, "[a]bsent specific facts establishing distinct and palpable injuries fairly traceable to the defendants' conduct the injury in fact requirement is not satisfied." *Id*. at 980–81 (citations omitted) (concluding no standing where plaintiff failed to allege that the challenged policy "impacted it in any measurable way," such as a reduction in membership or restriction on its ability to serve its members); *see also Sierra Club v. Morton*, 405 U.S. 727, 739 (1972) ("[A] mere 'interest in a problem,' no matter how longstanding the interest and no matter how qualified the organization is in evaluating the problem, is not sufficient by itself to render the organization 'adversely affected[.]'"); *Arkansas ACORN Fair Hous., Inc. v. Greystone Dev. Co.*, 160 F.3d 433, 434 (8th Cir. 1998) (finding no standing where plaintiff presented "no facts to quantify the resources, if any, that were expended" or how those expenditures were traceable to defendant's conduct). *Contra Granville House, Inc. v. Dep't of Health & Human Servs.*, 715 F.2d 1292, 1298 (8th Cir. 1983) (finding standing where challenged policy resulted in economic injury, denial of Medicaid funding, and "perceptibly impaired [plaintiff organization's] ability to provide its services").

Both MCU and Empower Missouri assert that they have associational standing because they have "diverted significant organizational resources to counteract Defendants' practices." Doc. 1 (Complaint), ¶¶ 14, 15, 184; Doc. 77 (Consolidated Opposition to Motions to Dismiss), pp.

3

7, 8. However, Plaintiffs do not allege that Defendants' conduct has impacted them in any "measurable way." *Cross*, 184 F.3d at 981. While MCU and Empower Missouri assert that they have expended resources on "educating the public about trauma and toxic stress" and "advocating for instituting restorative justice and ending out-of-school suspensions," Doc. 1, ¶ 184, they do not attempt to quantify these expenditures, nor do they explain how or from what other interests funds were diverted, how Defendants' conduct has impaired their ability to advocate on behalf of the populations they serve, or how their missions have been frustrated by the alleged diversion of resources. Thus, MCU and Empower Missouri lack standing to assert the claims in this Complaint.

### B. Exhaustion of Administrative Remedies

Next, Defendants argue that the Court lacks subject matter jurisdiction over each of Plaintiffs' claims because Plaintiffs failed to exhaust their administrative remedies as required by the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415(i)(2)(A).[1] While Plaintiffs do not assert claims under the IDEA, "the IDEA's exhaustion requirement also applies to claims under the Constitution, the ADA, the Rehabilitation Act, and other federal laws protecting children with disabilities" to the extent those claims seek relief "that is also available under the IDEA"—i.e., relief for the denial of a free appropriate public education ("FAPE").

---

[1] There is a split among the Circuit Courts as to whether failure to exhaust administrative remedies under the IDEA is a jurisdictional requirement or merely a condition precedent for filing an IDEA lawsuit. *Compare Payne v. Peninsula Sch. Dist.*, 653 F.3d 863, 870 (9th Cir. 2011) (en banc) ("In sum, we hold that the exhaustion requirement in § 1415(l) is not jurisdictional."), *overruled on other grounds by Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014) (en banc), *with Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 245 (2d Cir. 2008) ("Failure to exhaust the administrative remedies [under the IDEA] deprives the court of subject matter jurisdiction."). The Eighth Circuit has not squarely addressed the issue but has nevertheless affirmed dismissal of claims for failure to exhaust administrative remedies. *See, e.g., J.M. v. Francis Howell Sch. Dist.*, 850 F.3d 944, 946 n.2, 951 (8th Cir. 2017). As Defendants have argued that dismissal is appropriate under both Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) the Court need not address whether failure to exhaust administrative remedies in this context deprives the Court of subject matter jurisdiction or is merely a condition precedent.

*Francis Howell Sch. Dist.*, 850 F.3d at 947 (citing *Fry v. Napoleon Cmty. Sch.*, 137 S.Ct. 743, 752 (2017)); 20 U.S.C. § 1415(l).[2] But if "the remedy sought is not for the denial of a FAPE, then exhaustion of the IDEA's procedures is not required." *Fry*, 137 S.Ct. at 754.

To determine whether a suit seeks relief for denial of a FAPE the court looks "to the substance, or gravamen, of the plaintiff's complaint." *Id.* at 752. On the one hand, the goal of the IDEA is "to provide each child with meaningful access to education by offering individualized instruction and related services appropriate to her 'unique needs.'" *Id.* at 755. By contrast, Title II of the ADA and section 504 of the Rehabilitation Act "aim to root out disability-based discrimination." *Id.* at 756. The Supreme Court identified two questions to consider in making this determination: (1) "[C]ould the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was *not* a school—say, a public theater or library?" and (2) "[C]ould an *adult* at the school—say, an employee or visitor—have pressed essentially the same grievance?" *Id.* If the answer to both questions is yes, then the IDEA's exhaustion requirements likely do not apply. *Id.* A court may also consider the "history of the proceedings" and whether the plaintiff has "previously invoked the IDEA's formal procedures to handle the dispute." *Id.* at 757.

---

[2] 20 U.S.C. § 1415(l) provides as follows:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

5

### 1. Section 504 and Title II of the ADA (Counts II and III)

Plaintiffs allege in Count II of the Complaint that "[s]oley by reason of their unaddressed exposure to complex trauma and its effects, Student Plaintiffs have been denied meaningful access to public education by Defendants" in violation of Section 504 of the Rehabilitation Act. Doc. 1, ¶ 206. Plaintiffs assert that Defendants have failed "to ensure that Student Plaintiffs receive the specialized instruction, related services, and other resources necessary to access the benefits of a public education" and have "deprived those students of access to public education." *Id.* at ¶¶ 208, 213. Plaintiffs similarly assert, in Count III, that Defendants have failed to provide reasonable accommodations to address Student Plaintiffs' exposure to complex trauma and, in turn, have denied Student Plaintiffs "the benefits of an adequate public education" in violation of Title II of the ADA. *Id.* at ¶ 221.

Plaintiffs argue that their claims are not subject to the IDEA's exhaustion requirement because they are not seeking relief for denial of a FAPE. Despite using the word "discrimination" only once in Count II and not at all in Count III, *id.* at ¶ 201 (quoting Section 504), Plaintiffs assert that they are instead seeking "systemic relief for disability discrimination under the ADA [and] § 504 of the Rehabilitation Act." Doc. 77, p. 16. Plaintiffs assert that they do not seek a FAPE, but rather a "trauma-sensitive environment that will allow them to participate fully in a public benefit." *Id.* at p. 20.

However, application of the *Fry* framework shows that these grievances stem from Defendants' alleged denial of a FAPE as defined by the IDEA. While Plaintiffs assert "[t]hey are not seeking special education services," *id.* at p. 18, the Complaint describes in detail why Student Plaintiffs' current educational experiences are inadequate and how Defendants have failed to accommodate Plaintiffs' disabilities associated with their exposure to complex trauma. Plaintiffs

assert that Scott C. has a learning disability, qualifies for special education services, has an Individualized Education Program ("IEP"), and has been "deprived of the special education services to which he is entitled," "not offered academic support," and "deprived of meaningful access to the benefits of a public education." Doc. 1, ¶¶ 37, 29, 34, 48, 51. Likewise, Plaintiffs assert that, "[a]s a result of Defendants' failure to establish a system to deliver specialized instruction, related services, and reasonable accommodations necessary to address the impact of adversity and complex trauma," Miles M. has been deprived of meaningful access to the benefits of a public education. *Id.* at ¶ 80. These allegations are educational in nature, and could properly be addressed through IDEA due process complaint procedures. 34 C.F.R. § 300.507(a)(1)("A parent or a public agency may file a due process complaint on any of the matters described in § 300.503(a)(1) and (2) (relating to the identification, evaluation or educational placement of a child with a disability, or the provision of FAPE to the child).").

Moreover, the alleged conduct would not have occurred outside the school setting, and a nonstudent could not have "pressed essentially the same grievance." *Fry*, 137 S.Ct. at 756. Plaintiffs argue that the same claims "could be brought against a hospital that failed to provide a reasonable accommodation by training its staff to recognize and address trauma in the delivery of medical services." Doc. 77, p. 20. However, the Defendants' alleged failure to train school staff to recognize and address complex trauma is but one component of Plaintiffs' Complaint. As alleged in the Complaint, the "gravamen" of Plaintiffs' section 504 and ADA claims remains denial of a FAPE, or in Plaintiffs' words, denial of "the benefits of a public education" as a result of Defendants' failure to "deliver specialized instruction, related services, and reasonable accommodations necessary to address the impact of adversity and complex trauma" on Student Plaintiffs' "ability to learn, read, think, concentrate and/or communicate." Doc. 1, ¶¶ 51, 80, 208.

7

These are not the sort of claims that would be brought by a nonstudent against a non-school facility. Thus, Plaintiffs' ADA and section 504 claims are subject to exhaustion.

Plaintiffs argue next that, even if their claims are subject to the IDEA's exhaustion requirements, all three exceptions to exhaustion are met: (1) futility; (2) "inability of the administrative remedies to provide adequate relief"; and (3) "the establishment of an agency policy or practice of general applicability that is contrary to law." *J.B. ex rel. Bailey v. Avilla R-XIII Sch. Dist.*, 721 F.3d 588, 594 (8th Cir. 2013) (quotations omitted).

First, Plaintiffs argue that exhaustion would have been futile because "the system-wide practices alleged by Plaintiffs could not be resolved through individual IDEA administrative due process complaints." Doc. 77, p. 21. As an initial matter, there is not a class certified nor has there been a request for class certification in this action. Instead, the Complaint seeks relief available under the IDEA for two individual student plaintiffs—Scott C. and Miles M. Doc. 1, pp. 80–81 (Request for Relief), ¶ 2 (requesting injunctive relief "that will allow Student Plaintiffs an opportunity to receive an adequate public education."). Such relief is exactly the type of relief that is available under the IDEA.

In addition, the Eighth Circuit has previously rejected the argument that an inability to address a system-wide practice renders the entire administrative process futile. *See Avilla R-XIII Sch. Dist.*, 721 F.3d at 594–95 (rejecting futility argument where IDEA due process hearing would have "allowed the agency to develop the record for judicial review and apply its expertise to the Plaintiffs' claims . . . related to implementation of [plaintiffs'] IEPs, [and] what kind of compensatory education, if any would have been appropriate"). Although, here, the administrative venue may not have been able to address Defendants' alleged systemic problems, exhaustion would have "allowed the agency to develop the record for judicial review" and to "apply its

expertise to the Plaintiffs' claims to the extent those claims are related to implementation of [Scott C.'s IEP or Mile M's entitlement to specialized education], and what kind of compensatory education, if any would have been appropriate." *Id.*

Second, Plaintiffs argue that the IDEA's administrative process is unable to provide adequate relief to address the challenged systemic policies and practices of Defendants. However, "the IDEA's exhaustion requirement remains the general rule, regardless of whether the administrative process offers the particular type of relief that is being sought." *Id.* at 595 (quoting *M.P. ex rel. K. v. Indep. Sch. Dist. No. 721*, 326 F.3d 975, 980 (8th Cir. 2003)); *Nelson v. Charles City Cmty. Sch. Dist.*, 900 F.3d 587, 594 (8th Cir. 2018). In addition, the Eighth Circuit has required the exhaustion of administrative remedies under other contexts, "even where the precise form of relief sought by the plaintiff was not available in the administrative venue." *Avilla R-XIII Sch. Dist.*, 721 F.3d at 595; *see also King v. Iowa Dep't of Corr.*, 598 F.3d 1051, 1052 (8th Cir. 2010) (concerning § 1983 claims); *Foulk v. Charrier*, 262 F.3d 687, 695 (8th Cir. 2001) (concerning claims under the Prison Litigation Reform Act). "[W]here some of the relief the Plaintiffs seek is available under the IDEA and exhaustion would not be futile, the inadequate remedy exception to the exhaustion requirement does not apply." *Avilla R-Xiii Sch. Dist.*, 721 F.3d at 595.

Lastly, Plaintiffs assert that because they are challenging "systemic practices of general applicability that are contrary to law," this exempts them from the IDEA's exhaustion requirements. Doc. 77, p. 21. However, exhaustion is not automatically excused whenever a claimant challenges the validity of a policy or practice; the plaintiff must still show "that the policy is contrary to law and that the underlying purposes of exhaustion would not be served." *Avilla R-XIII Sch. Dist.,* 721 F.3d at 596 (quoting *Ass'n for Cmty. Living in Colorado v. Romer*, 992 F.2d

1040, 1044 (10th Cir. 1993)). "[C]ontrary to law" in this context means that exhaustion may be unnecessary if the alleged violations raise only questions of law, rendering agency expertise and the factual development of an administrative record less important. *Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1305 (9th Cir. 1992). Plaintiffs' claims, however, do not raise purely legal questions. Plaintiffs' section 504 and ADA claims are classic examples of the "kind of technical questions of educational policy best resolved with the benefit of agency expertise and a fully developed administrative record." *Id.*; *see also Avilla R-X-III Sch. Dist.*, 721 F.3d at 596. Thus, Plaintiffs have failed to show that the purposes of exhaustion would not have been served.

Because Plaintiffs did not file an IDEA due process complaint, request a due process hearing, or engage in the exhaustion procedures under the IDEA before bringing suit, and none of the exceptions to exhaustion apply, Counts II and III are denied for failure to exhaust administrative remedies.

### 2. Equal Protection (Count IV)

In Count IV, Plaintiffs allege that "Defendants have violated [their] rights to Equal Protection under the law by systematically refusing and failing to provide the same access to a free public-school education enjoyed by students and families of children who are not homeless." Doc. 1, ¶ 226. Plaintiffs allege that Defendants' policies and practices regarding transportation, enrollment, and discipline discriminate against Student Plaintiffs by acting to create a hostile environment toward homeless students and "deliberately exclude[ing] homeless students" from school on the basis of their homelessness. *Id.* at ¶ 228.

Unlike Plaintiffs' section 504 and ADA claims, Plaintiffs' equal protection claims seek redress for discrimination on the basis of homelessness, not on the basis of their alleged disabilities. Hypothetically, Plaintiffs could bring similar claims for discrimination against a public library or

other place of accommodation for exclusion on the basis of their homeless status. Similarly, an adult employee of Riverview Gardens School District could bring a claim against the District for its involvement in creating a hostile work environment toward employees who are homeless. Under *Fry*, these hypothetical scenarios suggest that Plaintiffs seek a remedy for alleged discrimination, and not simply for the denial of a FAPE. Accordingly, Plaintiffs' claims are not subject to the IDEA's exhaustion requirements.

### 3. McKinney-Vento Act (Count I)

Defendants also assert that Plaintiffs' claims in Count I, alleging that Defendants have failed to meet their obligations under the McKinney-Vento Act, are subject to the IDEA's exhaustion requirements. In relevant part, the McKinney-Vento Act provides that "[e]ach State educational agency shall ensure that each child of a homeless individual and each homeless youth has equal access to the same free, appropriate public education." 42 U.S.C. § 11431(1). While the use of the phrase "free, appropriate public education" may cause some confusion in light of recent Supreme Court precedent equating the IDEA's reference to "relief that is also available under [the IDEA]" to a FAPE, *Fry*, 137 S. Ct. at 755, the McKinney-Vento Act uses FAPE in a different context. Unlike the ADA, Section 504, and the IDEA, which were each implemented to protect the rights of individuals with disabilities, the McKinney-Vento Act was implemented by Congress for a different purpose—to protect the rights of individuals who are homeless.[3] The

---

[3] *Compare* 42 U.S.C. § 12101(b) ("It is the purpose of this chapter--(1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities[.]") *and* 29 U.S.C. § 701(b) ("The purposes of this chapter are--(1) to empower individuals with disabilities to maximize employment, economic self-sufficiency, independence, and inclusion and integration into society. . . and (5) to ensure, to the greatest extent possible, that youth with disabilities and students with disabilities who are transitioning from receipt of special education services under the Individuals with Disabilities Education Act (20 U.S.C. 1400 et seq.) and receipt of services under section 794 of this title have opportunities for postsecondary success.") *and* 20 U.S.C. § 1400(d) ("The purposes of this chapter are--(1)(A) to ensure that all

11

IDEA's exhaustion requirements only apply to claims under federal laws protecting the rights of children with disabilities. *See* 20 U.S.C. § 1415(l) (requiring exhaustion of claims under "Federal laws protecting the rights of children with disabilities . . . seeking relief that is also available under [the IDEA]").

Moreover, Plaintiffs seek relief in Count I which differs from the type of individualized special education available under the IDEA. *See* 20 U.S.C. § 1401(9) (defining FAPE as "special education and related services . . . provided in conformity with the individualized education program required under section 1414(d) of [the IDEA]."). Instead, Plaintiffs seek relief for Defendants' failure to: immediately enroll homeless students; utilize a dispute resolution process prior to unenrolling homeless students; provide transportation; identify homeless students; and review and revise "policies and procedures that may act as barriers to the identification, enrollment, attendance, or success in school of homeless youth and children, including residency requirements and policies regarding discipline, suspension, and expulsion." Doc. 1, ¶ 195, pp. 80–81, ¶ 1. While Plaintiffs also identify Defendants' failure to ensure that "homeless students receive special education services" as a violation of the Act, Plaintiffs' claim does not address the adequacy of the special education services provided, but rather Defendants' failure to identify and enroll homeless students more generally. *Id.*

---

children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs . . . [and] (B) to ensure that the rights of children with disabilities and parents of such children are protected[.]") *with* 42 U.S.C. § 11301 ("It is the purpose of this chapter--(1) to establish the United States Interagency Council on Homelessness; (2) to use public resources and programs in a more coordinated manner to meet the critically urgent needs of the homeless of the Nation; and (3) to provide funds for programs to assist the homeless, with special emphasis on elderly persons, handicapped persons, families with children, Native Americans, and veterans.").

Lastly, Defendants do not provide, and the Court has not found, any case applying the IDEA's exhaustion requirements to a claim under the McKinney-Vento Act. To the contrary, other courts have concluded, "the McKinney Act contains no statutory mechanisms for the administrative enforcement of the beneficiaries' rights," *Lampkin v. Dist. of Columbia*, 27 F.3d 605, 611 (D.C. Cir. 1994); *see also Nat'l Law Ctr. on Homelessness and Poverty, R.I. v. New York*, 224 F.R.D. 314, 320 (E.D.N.Y. 2004), and that IDEA administrative hearing officers lack jurisdiction over McKinney-Vento claims, *Holmes-Ramsey v. Dist. of Columbia*, 747 F. Supp. 2d 32, 41 (D.D.C. 2010) (finding "the [IDEA] hearing officer did not err in concluding that he lacked jurisdiction over Plaintiff's McKinney Act claim.").

For these reasons, the Court finds that Plaintiffs' McKinney-Vento Act claims are not subject to the IDEA's exhaustion requirements.

**C. Failure to State a Claim**

Defendants also move to dismiss each of Plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(6). To survive a motion to dismiss, a complaint must include enough facts "to state a claim to relief that is plausible on its face." *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim has facial plausibility when its allegations rise above the "speculative" or "conceivable," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007), and where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. For purposes of the pending motion to dismiss, the Complaint is liberally construed in the light most favorable to Plaintiffs. *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008).

As the Court has determined that Plaintiffs' ADA and section 504 claims must be dismissed for failure to exhaust administrative remedies, the Court addresses Defendants' remaining arguments only as they pertain to Plaintiffs' two remaining section 1983 claims (Counts I and IV).

### 1. McKinney-Vento Act (Count I)

The State Defendants argue that Plaintiffs' allegations "are insufficient to make a claim against Ms. Cash[, Homeless State Coordinator,] or any other State Defendant on a basis of purportedly failing to remedy violations" of the Act, and that Plaintiffs have failed to allege a regulation or policy resulting in the claimed violations. Doc. 52 (State Defendants' Motion to Dismiss), p. 6. The State Defendants assert that Plaintiffs' primary claims instead involve the District Defendants.[4]

However, the State has its own obligations under the McKinney-Vento Act to "ensure that each child of a homeless individual and each homeless youth has equal access" to the same public education as other youth. 42 U.S.C. § 11431(1)–(2); *see also Nat'l Law Ctr.*, 224 F.R.D. at 318 ("The Act required states to assure that each child of a homeless individual and each homeless youth had access to a free and appropriate public education."). These obligations on the State include "review[ing] and undertak[ing] steps to revise . . . laws, regulations, practices, or policies," at the state and local level, to ensure that homeless children are afforded the same public education as other children, 42 U.S.C. § 11431(2), and providing technical assistance and monitoring of the district to ensure compliance with the Act, *id.* at § 11432(f)(6).

The Complaint alleges that the State Defendants have failed to meet these obligations. Doc. 1, ¶ 196. Specifically, Plaintiffs allege that the District and State Defendants, both, have

---

[4] The District Defendants' sole McKinney-Vento argument is that Plaintiffs did not exhaust their administrative remedies.

14

policies and practices that they have not revised and that are barriers to "the identification, enrollment, attendance, [and] success" of homeless youth in school, "including residency requirements" and disciplinary and other policies that limit access to and/or disrupt enrollment for homeless youth. *Id.* at ¶¶ 195–96. While the Complaint describes in detail the District's policies, which allegedly violate the Act, *see id.* at ¶¶ 112–43, without reference to specific state policies, the Complaint also makes clear that the State Defendants have failed to meet their obligations to review, revise, and/or monitor the policies of the District and to provide technical assistance to ensure that the District meets is obligations, *id.* at ¶¶ 4 ("It is the State's clear responsibility to monitor and ensure the District's compliance with the Act, 42 U.S.C. § 11432(f)(6), and it has turned a blind eye to the District's numerous violations."), 104, 106.

The State Defendants also argue that Plaintiffs' allegations are insufficient to show that the State Defendants knew of or condoned the alleged violations happening at the district level. However, the Complaint specifically alleges that the Homeless State Coordinator for Missouri and Supervisor in DESE, "Donna Cash and [her] predecessors and colleagues have repeatedly and explicitly been informed of [McKinney-Vento] violations [at Riverview Gardens] and advised of their responsibilities." *Id.* at ¶ 111. While Defendants assert that this allegation "provides no information concerning who relayed information to Ms. Cash, when that occurred, or what the information was," Doc. 52, p. 6, Plaintiffs' McKinney-Vento claims are not subject to a heightened pleading standard. The State has its own obligation under the Act to ensure that homeless students have access to public education and to monitor, review, and revise policies of the District and State that might act as a barrier to access. 42 U.S.C. § 11431(1)–(2) (imposing obligations on "State educational agenc[ies]"). Additionally, as alleged in the Complaint, the State Board of Education is overseeing the District directly and has appointed a SAB to run the District for fifteen of the last

eighteen years. Doc. 1, ¶¶ 93, 96. Plaintiffs allege that the harms to the two individual Student Plaintiffs are manifestations of larger systemic violations, of which the State Defendants, through monitoring and supervision of the District, should have been well aware.[5] Thus, Plaintiffs have stated a claim for violation of the McKinney-Vento Act sufficient to survive Defendants' motions to dismiss.

### 2. Equal Protection (Count IV)

Defendants argue that Plaintiffs' equal protection claims must be dismissed because Plaintiffs have failed to allege that they were similarly situated in all relevant aspects to those students who allegedly receive different treatment. A person states an actionable equal protection claim if she alleges facts that she has been treated less favorably than those who are similarly situated. *Bogren v. Minn.*, 236 F.3d 399, 408 (8th Cir. 2000).

Here, Plaintiffs allege that they are being treated less favorably than other Riverview Gardens students who are not homeless. For example, Plaintiffs allege that homeless students are denied transportation to school and are funneled into segregated educational environments on the basis of their homelessness, while students who are not homeless are permitted to attend high school with their peers. *See, e.g.*, Doc. 1, ¶¶ 142 ("The District frequently diverts homeless students into alternative education programs instead of permitting them to attend high school and frequently unenrolls them for attendance and behavior problems related to their homelessness."), 226 ("The Defendants have violated the Plaintiffs' rights to Equal Protection under the law by systematically refusing and failing to provide the same access to a free public-school education enjoyed by students and families of children who are not homeless."). Thus, Plaintiffs have met

---

[5] While Mo. Rev. Stat. § 162.081.5 shields the State from liability for acts of the SAB, the State Board of Education has independent oversight responsibilities over the actions of school districts, irrespective of the SAB's role over the District. Mo. Rev. Stat. § 161.092.

the threshold requirement of demonstrating less favorable treatment for homeless students than similarly situated students who are not homeless at Riverview Gardens.

The State Defendants also argue that Plaintiffs' Fourteenth Amendment claims must fail because "the conduct of state actors and policies and practices of the state are not connected to the alleged denial of equal protection" taking place at the District level. Doc. 52, p. 9. However, Plaintiffs allege that the State Defendants have not only failed to comply with their obligations under the McKinney-Vento Act, excluding homeless students from accessing a public education, Doc. 1, ¶¶ 194–97, but that the State "has turned a blind eye to the District's numerous violations," *id.* at ¶ 4. Thus, Plaintiffs' allegations are sufficient to properly allege Fourteenth Amendment claims against the State Defendants.

### 3. Injunctive Relief

The State Defendants also argue that Plaintiffs' requests for injunctive relief in all counts apply only to the District Defendants. However, as previously discussed, the State Defendants have their own statutory obligations under the McKinney-Vento Act. Plaintiffs request injunctive relief to implement policies and procedures to ensure that all Defendants comply with the McKinney-Vento Act and Fourteenth Amendment, including requesting that the State Defendants monitor the District for compliance with the McKinney-Vento Act. These requests for relief are applicable to both the State and District Defendants.

### D. Rule 8(a)(2)'s Short and Plain Statement Requirement

Lastly, Defendants argue that Plaintiffs' Complaint should be dismissed because it is not a "short and plain" statement as required by Federal Rule of Civil Procedure 8. Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(d)(1) requires that each allegation be "simple, concise, and direct."

However, dismissing a complaint is "reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Salahuddin v. Cuomo*, 861 F.2d 40, 41 (2d Cir. 1988); *see also Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058 (9th Cir. 2011) ("verbosity or length is not by itself a basis for dismissing a complaint[.]" (quotation omitted)). Defendants object that the Complaint contains "a mass of statistical data," "lengthy discussions about the history, purpose, and general requirements" of the statutes at issue, and "general statements of accepted American values that few would disagree with," Doc. 52, p. 3, but Defendants do not assert that the Complaint is "confused" or "ambiguous," or that it prevents them from responding to the claims alleged. In fact, the District Defendants filed an answer to the Complaint, Doc. 53, prior to seeking leave to file a motion to dismiss without any apparent difficulty.

Therefore, the Court declines to exercise its discretion to dismiss Plaintiffs' Complaint on these grounds.

## III. Conclusion

For these reasons, the State and District Defendants' motions to dismiss, Docs. 52 and 63, are granted in part and denied in part. Plaintiffs Metropolitan Congregations United and Empower Missouri are dismissed for lack of standing. Counts II and III of Plaintiffs' Complaint are dismissed for failure to exhaust administrative remedies.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: February 25, 2019
Jefferson City, Missouri